This v. Franklin is submitted, and we will take up Trudeau v. Direct Marketing Concepts. Please, the court. David Bradford on behalf of Mr. Trudeau. With the court's permission, I'm going to take five minutes of argument. Mr. Nagel, who represents Mr. Barefoot, will take approximately three and will reserve the rest for rebuttal. This is a case in which a Lanham Act claim was dismissed on the ostensible theory that the remedy sounded in breach of contract, but in which the district court then denied leave to assert that very breach of contract claim, creating a situation where the defendants concede that they promised to pay my client a 5% royalty on this product, acknowledged that millions of dollars of the product was sold, that he hasn't been paid a penny, and under Judge Real's orders, my client would never have a day in court on any legal theory. The orders of Judge Real, which provide no reasons or findings, include a number of egregious errors. Among them was denying leave to amend. My client had a right to amend as of right. There was no final judgment. There was no response in pleading. The June 4 order, as written by opposing counsel and submitted and signed by the Court, did not dispose of two of the claims. Furthermore, this Court has held in at least three cases, the Doe case, the Schreiber case, and the Breyer case, cited in our briefs, that it is improper for a district court to dismiss a complaint and deny leave to amend, which is precisely what was done here. Furthermore, even if the denial of leave to amend were somehow reviewable on an abuse of discretion standard, it plainly is an abuse of discretion, because this Court has recognized that any time a deficiency in a pleading can be cured by amendment at the pleading stage, it is an abuse of discretion not to permit that deficiency to be cured. Here, the only identified deficiency in the complaint was the theory, erroneous as it was, that the Lanham Act claim was precluded by the fact that my contract my client arguably had a contract remedy. If so, the deficiency in the complaint was plainly curable by permitting him to assert the breach of contract claim. The dismissal of the Lanham Act claim on the theory that my client also had a contract remedy was also erroneous. The case is recognized that where a contract is materially breached, a party is entitled to pursue both the contract and the Lanham Act remedy. Here, it's undisputed that the defendant refused to pay a penny to my client or Mr. Barefoot under his arrangement, for that matter, and clearly, under those circumstances where they're not honoring the contract, we are entitled to pursue a Lanham Act remedy. You know, I think God, I don't know what caused Judge Reel to do what he did in this case, but I suspect he was maybe more persuaded by the fact that the bargained-for commodity somehow found its way into the hands of the other side before any payment was made. I don't know what Judge Reel was thinking as well, but the other – Judge Reel. I'm sorry. I apologize. Judge Reel was – But there are some very important findings, and all we can do is speculate. But in fact, the declaration signed by the defendant acknowledged that they had agreed to pay a 5 percent royalty. That was their theory. They had acknowledged that they never paid that royalty, and under that royalty at this point, there would be literally millions of dollars which would be owed here which have never been paid. So regardless of what the perception may have been, the face of the complaint alleged that this show was broadcast without contractual permission or authorization and that no compensation other than the $25,000 advance had been provided. There's no dispute that a royalty was due over and above the advances and that the royalty has never been paid. And furthermore, I believe that the defendants acknowledge a dismissal under 12b-6 is impossible here because the face of the complaint asserted a valid Lanhamet claim. The only way you could find a way to dismiss is if you went outside the pleadings and found there was a contractual relationship that was inconsistent with the allegations of the complaint. They say the district court could do that because they filed a motion under 12b-1 as well as 12b-6 and that there was a lack of jurisdiction under 12b-1 because the complaint was dismissible under 12b-6. Well, I believe that the Supreme Court in Bell v. Hood and this Court as well has recognized in the Bollard case that that's really a dismissal for failure to state a claim. And unless a Federal claim under a Federal statute is frivolous and without any substantial basis, the case should not be dismissed for failure of jurisdiction. Those type of determinations are merits-based determinations that should be taken up on summary judgment or trial. We never had discovery. We never had a chance for a hearing. Isn't the real problem is that we don't know any of the bases upon which Judge Rill dismissed these claims? And we don't really know because he didn't say whether he was dismissing on jurisdictional grounds or for failure to state a claim. I think that's a fundamental part of the problem, but I would go further, Your Honor, and say that one cannot hypothesize an appropriate basis for this dismissal. I believe the other side concedes it could not conceivably be under 12b-6 because there's no suggestion the complaint wasn't valid on its face. And I would say as a matter of law it was inappropriate under 12b-1 because the only theory on which you could say there was a lack of jurisdiction is to say that the complaint didn't state a cause of action in the first place, and that's really a 12b-6 determination. And furthermore, there was diversity jurisdiction. All the cases throwing out cases or Lanham Act claims or trademark claims under 12b-1, the Court notes that there was no diversity jurisdiction and, therefore, there was no independent basis of jurisdiction. So with diversity, it could not have been under 12b-1, and because there's no suggestion the complaint didn't state a valid cause of action, it was inappropriate under 12b-6. Finally, the award of costs was an abuse of discretion. This was a situation where the defendants contested personal jurisdiction in Illinois and said there is personal jurisdiction in California. We wanted to have our day in court and not spend a lot of time fighting about the jurisdictional issues, and we did what other courts have applauded and said, we won't waste time and money on the jurisdictional issues. We'll file the very same complaint where you say it ought to be brought. And for that, costs and sanctions were imposed, and any doubt about the propriety of suing in Illinois in the first place was put to rest when the defendants filed their own suit at a later time against Mr. Trudeau and Mr. Barefoot and chose the very court, Illinois, where they contested jurisdiction and said it was inappropriate to file in the first place. If the Court doesn't have any other questions, I will let Mr. Nagel address Mr. Barefoot's issues and reserve further time for rebuttal. Thank you. May it please the Court. Ronald T. Nagel on behalf of Plaintiff Appellant Robert Barefoot. I don't want to repeat what Mr. Bradford has said. I'll just focus limited to Mr. Barefoot's issues. To me, in essence, what Judge Real did was grant summary judgment on the face of conflicting affidavits. And the motion that was filed was a 12b-6 motion. If we look at the record, the supplemental record that was submitted, pages 98 and 99, the notice of motion that was filed says it's a 12b-6 motion and a 12b-1 motion, but the language for the grounds for the motion states that it's a failure to state a claim. And it's quite clear that that was what they proceeded on before Judge Real, which under a 12b-6 motion, as we know, we're limited to looking at the complaint and seeing whether or not the complaint sets forth the grounds for relief. Here, we had conflicting affidavits from both sides as to whether or not there was a contract that was allegedly formed. And on the face of those conflicting affidavits, it appears, as I said earlier, that Judge Real granted what, in essence, is summary judgment and made a finding, at least, that there was some form of contract that was entered into. And then it appears again on that basis that he ordered what he ordered. And our concern is what the Court has already echoed, is that we really don't know the basis for why he did that. And it also he did it with prejudice. So we're precluded, again, from repleting or going back and having another shot at it. And with that, I will defer unless the Court has any further questions. All right. Thank you. You may reserve your time. What do we have to review? Judge, what you have to review here is the district. No. I know what we have to do. Don't worry. I'm saying, what did Judge Real give us that we can review? I'll ask you in a clearer way. Yes, Judge. Here's what Judge Real gave us. It is clear that Judge Real found the existence of a contract in this case and, as such, dismissed the Lanham Act claims on the basis of 12b-1. How do we know that? We know that for a couple reasons. One, they found that the contract existed because he dismissed those Lanham Act claims. Under all of the precedent that indicates that where you have a contract in existence, you can't bring claims on a Federal case. In order to know what Judge Real did, don't we have to make a lot of assumptions on this record? I don't think that we have to do that, Judge, for a couple reasons. Not we, me and you. We, the Court. We, the collective we. I think what the Court has to do and recognize is that, and all parties acknowledge in their opening briefs that Judge Real found the existence of a contract. It's Judge Real. I'm sorry? It's Judge Real. And he's very sensitive when his name is mispronounced, so I would ask that you correctly pronounce his name. I apologize for that. And what the district court found is that there was a contract. All parties acknowledge that in their opening briefs. They indicate that pursuant to Rule 12b-6, the Court necessarily had to have found the existence of a contract here to dismiss it. We respond in our reply briefs that, of course, what the judge did here is look at the case under 12b-1. Under that, the Court dismissed the claims for lack of subject matter jurisdiction and such dismissal was with prejudice. Now, however, and again, there's a certain disingenuousness on the part of the appellant here. They come back once the case is examined under the 12b-1 magnifying glass and say that, well, it was wholly improper for the Court to find the existence of a contract. And, in fact, Mr. Barefoot contradicts himself in the briefs here and says that it's DMC, the appellees, who sort of infer into the record the existence of a contract. And if you look at that ---- And if you look at that brief, you'll see that there was no payment. There are two separate contracts here. Is it a yes and no answer? Yes, with respect to both. And there was payments made. Was payment made? Yes, there were partial payments made on both instances. So for Trudeau's counsel to say that there was no monies transferred, that's incorrect. They didn't say no monies. They said no money except the initial $25,000. For Mr. Trudeau, the initial $25,000 was transferred here. For Mr. Barefoot, there were payments that were made pursuant to the royalty provisions. And all of that information was in the district court records. Do we know it from findings made by the district court? We do not. We do not. But we do know ---- Does that pose a problem when we want to review this case? I think that it does not because of all the evidence that was before the district court at that time as to the existence of a contract. There was ample evidence with respect to depositions that had been taken in the Illinois case. Normally we get a record. We get something to review. And then we know what the district court did. We don't have to make an assumption. And sometimes you make an assumption and you're just dead wrong. Your assumption is wrong. So you look to see what did the district court say. And when we look to see what the district court said in this case, what do we find? Well, we don't find that the district court said much. And we do have to infer the basis of the district court's decision. However, the district court was armed with a motion to dismiss that was clearly based on two grounds, 12B1 and 12B6. Counsel, what about the ability to amend the complaint? Right. It seems to me that's a real problem for you. It's a diversity case. Did they not have an absolute right to amend? Well, whether the absolute ---- Is that a yes or no? I would say with respect to absolute right, the answer is no. Because it was clear that Judge Reel had intended to dismiss the entire complaint at that point. And that was reaffirmed by subsequent action that was taken. That's not a reason for not allowing amendment as of right? That's correct. But I think the reason why amendment was not allowed in this case under the Court's permission is that the Court looked at what had happened here, looked at the history of the cases between the parties. Are you speculating about what the Court thought and did and looked at? I don't think so. Because the judge was armed with a motion under Rule ---- Well, just because you file something doesn't mean that it was necessarily the basis for decision. I think that's correct. Unless we're told what the basis for decision was. That's correct. But the judge did enter two orders, and one was on the motion to dismiss, and the other was on the Rule 41D. So the Court clearly had contemplated what happened in the Illinois case. Right. Let's talk about that. Didn't they voluntarily dismiss that case and move it to a venue that you had argued was proper? Yes, they did. That's exactly what they did. And did you move for sanctions for that, an award of costs under 41D for that? The issue for sanctions, and I think the pivotal issue ---- Counsel, you seem to have a real problem with yes or no. I'm sorry. After they voluntarily agreed to take this case to a venue that you deemed proper, did you move for an award of costs under 41D? Yes. And I think the basis for that motion, as well as the Court's decision, was that there was a renewed motion for a temporary restraining order that was filed in the district court here in California. They had filed the complaint in Illinois, moved for a TRO. That motion was denied. Based on the personal jurisdiction question, depositions were taken. After we had put three witnesses up for deposition, the next business day they refiled in California. I think that the mistake that they made in this case was that they removed for a temporary restraining order here. So I think that could be clearly interpreted as a basis upon which the Rule 41D award was given. But we don't know that either, do we? We don't know that. Yes, we don't know that. We don't know that. That's correct. That's correct. We don't know that. But I think, again, if you look to two driving factors here, one is that there was some form-shopping going on. There was also claim-splitting that was going on. So didn't you file in Illinois after that? Isn't there a case where you used the decisions in this case as issue preclusion or res judicata against these same parties in Illinois? That's correct. We filed in Illinois. But who's form-shopping? First you tell them they shouldn't be in Illinois. You tell them to come out here. They come out here. You used whatever happened here against them in Illinois. Who's doing the form-shopping? Well, any plaintiff has its choice of forum so long as there's personal jurisdiction over defendants. And that was the basis for our filing. The second action relating to a separate infomercial in Illinois. These defendants had acknowledged that personal jurisdiction would lie in Illinois. That's the basis on which we filed here. And as for the question of whether these plaintiffs are wholly cut out of any sort of remedy, Mr. Barefoot has an arbitration forum available to him. Mr. Trudeau has, through the Illinois action, a possibility of bringing claims. And they also have a right to be in the district court and pursue the action on a record that a court of appeals can review. They may have that right. That's correct, Your Honor. Every litigant enjoys that right. Why don't they? And I think why don't they is because the history of this case and the two actions that brought the case to California. And I think that, again, the pivotal issue was that they removed for temporary restraining order, which suggests that there was some forum shopping that was going on here. Once the district court found the existence of a contract, it dismissed those Lanham Act claims, and such dismissal was with prejudice. And for this reason, the cases on which the appellants attempt to rely to say that you can assert both contract and Lanham Act claims are distinguishable. But that's not what they did here. They had the availability for alternative pleading. They had the availability to allege breach of contract claims as well. What they chose to do in this case was rely solely on the Lanham Act. And why did they do that? They did that because you get trouble damages under the Lanham Act. Once the court found the existence of a contract, it properly sent Mr. Barefoot's state law claims to arbitration. For these reasons, again, the claim splitting, forum shopping, this was a proper reason why the court denied leave to amend, and also why the state law claims were dismissed with prejudice. And we ask that the district court's decision, Judge Rios' decision, be affirmed. Thank you. Thank you. Thank you, Your Honors. Briefly in rebuttal, we've heard again today an acknowledgment that there was a contract, and yet we will never have our day in court on that contract unless the order denying leave to amend is reversed. And further, it is conceded at page 14 of their brief that in addition to the $25,000 advance, which we acknowledge receiving, that Mr. Trudeau was to receive a 5 percent royalty on all sales. The record in Illinois now establishes that those sales are in the tens of millions of dollars, so that $25,000 does not go very far for what Mr. Trudeau is clearly due under a contract, and yet somehow he has to be told you'll never get a penny of that, you'll never get a day in court, because somehow your attorneys did something wrong in the pleadings of this case, which – Can I ask a question? Please, Your Honor. What's the status of the Illinois action? And if we were to reverse these decisions, what impact would that have there? Judge Shader has made clear that until this Court rules on Judge Rios' opinions, he must take those as good law, and he is treating them as a 12B6 determination, and therefore preclusive of any remedy in any other form. We took them up on their word that this was a dismissal for jurisdictional reasons, and therefore said if it's jurisdictional, we've never had our day in court, maybe we're obligated to assert that as a compulsory counterclaim now that they've sued us in Illinois. We don't want to be accused of not having taken advantage of that opportunity to assert a claim, and when we were – when we did, we were told that as inscrutable as this order is, which gives no reasons, all we can assume is that Judge Rios, rightly or wrongly, dismissed for failure to state a claim, and therefore you are out of court forever, notwithstanding the concession that there is a valid contract, and notwithstanding the lack of dispute that we've never been paid a penny in royalties under that contract. And I submit that this is really an egregious error that should be corrected by this Court. Furthermore, this Court in both Doe and Schreiber have addressed circumstances where district court fails to give reasons for denying leave to amend and has not been willing to speculate or try to infer reasons that might have been given on the basis of some kind of speculation and has reversed those uniformly for abuse of discretion. Finally, I would just note that because the record in Illinois makes clear that Judge Lefkow was troubled by personal jurisdiction and specifically commented in dealing with the TRO that the first question that she would have to address was personal jurisdiction, we believed it was appropriate to try to get a ruling on the TRO on the merits where the personal jurisdiction issue would not infect the Court's analysis of that. That is why we came to a court where they did not dispute personal jurisdiction. It's why we then sought the TRO that the district court in Illinois had trouble with because of the personal jurisdiction issue that was plainly not an attempt to get a second bite at the apple or to form shop. It was an effort to get a day in court, and one which I may add we have yet to have nearly two years later as we stand before this Court today. We ask that you reverse the dismissal of the Lanham Act claim, that you grant leave to amend, and that you vacate the award of costs. And thank you very much. Thank you, counsel. Trudeau v. Direct Marketing Concepts is submitted. Mendez v. Rowe is submitted on the briefs. And we will adjourn for today. Thank you very much, counsel. All rise. The Court of Discussion is adjourned. The Court is adjourned. Thank you.
judges: B. Fletcher, Farris, Wardlaw